SELECTMEN OF WELLESLEY *vs.* BOSTON AND WORCESTER STREET RAILWAY COMPANY.

Worcester. December 8, 9, 1904. — May 20, 1905.

Present : KNOWLTON, C. J., MORTON, LATHROP, BARKER, & LORING, JJ.

*Street Railway.*

Under R. L. c. 112, § 7, the board of aldermen of a city or the selectmen of a town in granting a location to a street railway company cannot impose a condition

regulating fares. Following *Keefe* v. *Lexington & Boston Street Railway,* 185 Mass. 183.

Under R. L. c. 112, § 7, the board of aldermen of a city or the selectmen of a town in granting a location to a street railway company lawfully may impose a condition that the company shall furnish a system of electric lighting from its own power station for the entire length of the location, giving light of a specified power.

There is nothing in R. L. c. 121, §§ 24, 26, c. 122, § 1, or any other statute of the Commonwealth making it unlawful for a street railway company as an incident to its business to use electricity from its power station in lighting the streets through which its cars run.

BILL IN EQUITY, filed in the Supreme Judicial Court on July 14, 1903, under R. L. c. 112, § 100, by the selectmen of the town of Wellesley to enforce certain conditions imposed on the Boston and Worcester Street Railway Company by a location granted on January 17, 1902, and accepted by that company on February 14, 1902.

The case came on to be heard before *Barker,* J., who, at the request of the parties, reserved it for determination by the full court, upon the pleadings, the report of a special master, with the exceptions thereto, the interlocutory decree thereon and the appeal therefrom, and the amended report of the special master, with the exceptions thereto, and the interlocutory decree thereon and the appeals therefrom, such disposition to be made of the case as justice might require.

The two conditions of the location referred to in the opinion were as follows :

" Fifth : The poles or structures for conveying electricity for the operation of said railway shall be placed between the tracks in the middle of the reserved space, shall be painted, properly protected from decay, and of material satisfactory to said selectmen ; and like provisions shall be made for such other poles as shall be required wherever said tracks shall not be located within a reserved space. Said poles or structures shall be placed as the selectmen shall direct and approve. Said street railway company shall furnish a system of electric lighting from its own power station for the entire length of said street, and attach and maintain upon each pole on which such attachment is required, two bracket arms upon a longitudinal axis of the street, and furnish and maintain the same with incandescent lamps and current of eighty-seven and one-half watts energy, such as will maintain

and furnish light for not to exceed one hundred lamps in number, giving light of the standard of twenty-five candle power, throughout every night in the year, between the hours of sunset and sunrise; the number and location of said lamps to be determined by the selectmen, and any change in the hours of lighting to be subject to their order from time to time."

"Fifteenth: Said street railway company shall charge not exceeding five cents for a single fare over its railway between any part of Wellesley and the point of junction with the Boston Elevated Railway Company's tracks in Brookline, nor between any two points in the town of Wellesley, nor between any part of Wellesley and North Main street, Natick, at the junction of the Natick and Cochituate Street Railway tracks. The payment of said fare of five cents shall entitle the passenger paying the same to a transfer providing for a continuous ride in said town upon the cars of any street railway within the limits of the town of Wellesley whose tracks cross or connect, or shall hereafter cross or connect with the railway of said street railway company, the rates of fare charged by said street railway company for the transportation of scholars of the public schools of said town between any given points from or to which it is necessary for them to ride in travelling to and from the schoolhouse in which they attend school and their home, shall not exceed one half the regular fare charged by said street railway company for the transportation of other passengers between said points. Tickets for the transportation of scholars as aforesaid shall be sold in lots of ten each, and shall be received on said street railway only on such days as said schools shall be in session."

*V. J. Loring,* (*C. S. Quinn* with him,) for the plaintiffs.

*G. W. Cox,* for the defendant.

LORING, J. With two exceptions all the questions raised in this case have been disposed of by a stipulation entered into between the parties since the argument. The two questions not so disposed of relate to the validity of two restrictions contained in the location of the defendant corporation's railway in the town of Wellesley, over Worcester Street, otherwise known as the Boston and Worcester Turnpike, in said town, to wit, (1) so much of the fifth as requires the defendant to light said street to the extent there prescribed, and (2) the fifteenth, which

regulates fares in Wellesley and between the junction of the defendant's tracks with those of the Boston Elevated Railway in Brookline to any point in Wellesley, and from any point in Wellesley to the junction of the defendant's tracks with those of the Natick and Cochituate Street Railway tracks in Natick.

On the question of fares the case of *Keefe* v. *Lexington & Boston Street Railway*, 185 Mass. 183, is decisive. The location there in question was governed by the same provisions of law as those which govern the location now before us. The only difference is that the acts in force when the location in *Keefe* v. *Lexington & Boston Street Railway* was granted had been re-enacted in the Revised Laws at the date of the location here in question. We find nothing in the argument attacking the decision made in that case which requires discussion.

This brings us to the question of lights. Apart from the fact that by the last clause of St. 1898, c. 578, § 13, restrictions in locations made before that act are put on the same footing as restrictions under the act, *Selectmen of Hyde Park* v. *Old Colony Street Railway*, ante, 180, the restriction as to lights in the case at bar is of the same character as that as to watering in *Newcomb* v. *Norfolk Western Street Railway*, 179 Mass. 449, and that as to repairs in *Selectmen of Hyde Park* v. *Old Colony Street Railway*, ante, 180. Electric cars in a reserved space ordinarily are run at such a rate of speed that it well might be thought that a grant of the right to run them makes it necessary to have one hundred lights of twenty-five candle power each, in the distance of five miles. It is not necessary to consider whether the fact that such lights might be thought necessary for the accommodation of people wishing to take the defendant's cars could be considered by the selectmen in making this requirement.

The defendant has argued that it is forbidden to use its electricity for lighting purposes by R. L. cc. 121, 122, calling especial attention to §§ 24 and 26 of c. 121, and § 1 of c. 122. But we are of opinion that it is not forbidden to use electricity for lighting as an incident to its business. It may use it to light its cars. And in our opinion it may use it as properly to light the streets through which its cars run as to light its cars while running through those streets.

*Decree accordingly.*